**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., )<br>    Plaintiff, )<br> )<br> v. )<br> )<br>TECHNICAL CONSUMER PRODUCTS, INC. dba )<br>TCP LIGHTING, and HAWTHORNE )<br>GARDENING COMPANY, )<br>    Defendants. )<br> )<br> ) | CA No. 23-CV-186-JNR |
| TECHNICAL CONSUMER PRODUCTS, INC. dba )<br>TCP LIGHTING., )<br>    Third-Party Plaintiff, )<br> )<br> v. )<br> )<br>SEOUL SEMICONDUCTOR CO. LTD, )<br>    Third-Party Defendant. )<br> ) | |

**THIRD PARTY DEFENDANT SEOUL SEMICONDUCTOR CO. LTD'S REPLY BRIEF
IN SUPPORT OF MOTION TO BIFURCATE THIRD PARTY INDEMNIFICATION
CLAIMS FROM INFRINGEMENT CLAIMS**

Dated: May 6, 2025

MEYER, UNKOVIC & SCOTT LLP

David G. Oberdick (*pro hac vice*)
PA I.D. #47648
Kate E. McCarthy (*pro hac vice*)
PA I.D. #325771
Henry W. Oliver Building
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222-2315
(412) 456-2800
(412) 456-2864/Fax
dgo@muslaw.com
kem@muslaw.com

BAYARD, P.A.

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 North King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Seoul Semiconductor Co. Ltd.*

4904-9683-7949

Jennifer Jonak (*pro hac vice*)
Jonak Law Group, P.C.
1711 Willamette St., Suite 301, # 145
Eugene, OR 97401
Telephone: (541) 525-9102
jenny@jonak.com

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

I. INTRODUCTION .............................................................................................................. 1

II. ARGUMENT ...................................................................................................................... 1

   A. Patent Infringement Claims and Indemnification Claims are Distinct Legal Issues .......... 1

   B. The Complexity of the Issues Supports Bifurcation ........................................................... 6

   C. Bifurcation Is Appropriate for Proportionality and Judicial Efficiency ............................. 7

   D. Bifurcation Does Not Prejudice the Defendants ................................................................. 9

   E. Bifurcation is Not Premature .............................................................................................. 10

III. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Ciena Corp. v. Corvis Corp.*, 2002 U.S. Dist. LEXIS 20826 (D. Del. Oct. 22, 2002) .................. 7

*Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 3:15cv1300,
    2017 U.S. Dist. LEXIS 134682 (D.S.C. Aug. 23, 2017) ........................................................... 10

*Enzo Life Scis., Inc. v. Digene Corp.*, No. 02-212-JJF, 2003 U.S. Dist. LEXIS 10202
    (D. Del. 2003) ........................................................................................................................... 10

*Magazzu v. Volmar Servs.*, No. 08-cv-2078, 2009 U.S. Dist. LEXIS 119213
    (D.N.J. Dec. 21, 2009) ......................................................................................................... 4, 10

*McGuire v. Bridgeport & Port Jefferson Steamboat Co.*, 2001 U.S. Dist. LEXIS 19753
    (S.D.N.Y. Nov. 29, 2001) ........................................................................................................... 4

*Miller v. N.J. Transit Auth. Rail Operations*, 160 F.R.D. 37 (D.N.J. 1995) ................................. 10

*Moreno v. NBCUniversal Media, LLC*, 2013 U.S. Dist. LEXIS 198660 (C.D. Cal. 2013) ......... 10

*Pridemore v. Hryniewich*, 341 F.R.D. 36 (E.D. Va. 2022) ............................................................ 4

*Wsou Invs., LLC v. Canon, Inc.*, 2022 U.S. Dist. LEXIS 252800 (W.D. Tex. 2022) ............. 4, 5, 6

**I.      INTRODUCTION**

In the complex litigation involving Samsung, TCP, Hawthorne Gardening Company, and Seoul, bifurcation under Rule 42(b) offers a clear and practical solution to promote judicial efficiency and fairness. Samsung's patent infringement claims against TCP and Hawthorne rely on detailed semiconductor analyses, expert testimony, and prior art, which are entirely separate from TCP's indemnity claims against Seoul, centered on contractual obligations and a multifaceted global supply chain. Conducting these distinct legal issues in a single trial risks overwhelming jurors with unrelated evidence, wasting judicial resources, and creating confusion, as the technical patent disputes have no connection to the indemnity issues involving supply agreements and sourcing records.

By bifurcating the claims, the Court can ensure each issue is addressed, free from the risk of prejudice or misinterpretation. Samsung's infringement case requires specialized technical evidence, while Seoul's indemnity dispute with TCP involves navigating complex contractual relationships and supply chain details, with different legal standards, witnesses and evidence. Separating these matters will streamline the trial process, enhance clarity for the jury, and maintain proportionality, particularly given the limited damages at issue. More specifically, the recoverable damages are *de minimis*, as the LEDs at issue are valued in the pennies and a reasonable royalty is only a fraction of the same. Granting Seoul's motion to bifurcate is a balanced approach to achieving a fair and efficient resolution.

**II.     ARGUMENT**

   **A.     Patent Infringement Claims and Indemnification Claims are Distinct Legal Issues**

The indemnity claims TCP asserts against Seoul and the patent infringement claims that Samsung asserts against TCP and HGC are distinct legal issues. As set forth in Seoul's opening

brief, Samsung's infringement case will turn on technical semiconductor testing analysis, expert testimony and prior art. This is unrelated to TCP's indemnity dispute with Seoul, which centers on contractual obligations and an extremely complex supply chain.

Samsung has accused various TCP and HGC products of infringing its patents. Patent infringement is established when an accused products meets all of the limitations of the asserted claims – regardless of whose component is contained inside the accused product. To prove infringement, Samsung will rely on testing to show that the elements of the asserted patents have been met and expert testimony based upon the claim construction in this case. Indeed, Samsung's infringement contentions and allegations in its complaint focus on the accused products and "all TCP [or HGC] products containing the same or substantially similar LED chips…" (D.I. 245 at 2.) TCP has admitted in discovery that it uses multiple suppliers in its products. Thus, regardless of which supplier's LED chips are included in TCP's products, the issue for infringement will be whether those chips, whether manufactured by Seoul or another supplier, meet the elements of the patent claims. The manufacturer or supplier of the LED chips is irrelevant to Samsung's claims, and Samsung has no burden or reason to prove the identity of the manufacturer or supplier.

By contrast, indemnity will turn on whether there is any valid contract or other legal basis for indemnification between TCP and Seoul and whether the LEDs in the Accused Products were manufactured or supplied by Seoul. If Seoul shows as a matter of law that there is no legal basis for indemnity, then there is no basis for Seoul to be a party in this case, because Samsung did not name Seoul as a party and Seoul's involvement has been as a result of TCP's complaint for indemnification. TCP appears to concede in its opposition that indemnity and infringement are distinct legal issues that will involve different evidence: TCP argues that even if there is no infringement, Seoul should still be liable for indemnification of defense costs, and a "second trial

could be necessary regardless of the infringement outcome." (D.I. 295 at 11.) It confirms that the indemnity and infringement claims are distinct.

The legal issues for indemnity turn on the contractual relationship and privity (or lack thereof) between Seoul and TCP, and the evidence will involve the supply chain and bills of material. The legal issues for infringement will turn on claim construction, prior art/invalidity, and highly technical testing and expert testimony. Samsung does not have to put forward any evidence regarding privity between TCP and Seoul in order to obtain a jury finding that there is infringement of its patents. Patent infringement can be found regardless of the identity or source of the components. In fact, Samsung has confirmed that its infringement expert will not be opining as to the identification of the supplier of LED components in the accused products – because it does not matter for purposes of determining whether the accused product infringes.

As the plaintiff, Samsung has the burden of proof on infringement. Its primary evidence will be microscopic testing and analysis of the accused products. Samsung has stated in meet and confer discussions that it intends to rely on TechInsights, a Canadian testing company, for its evidence and analysis of the accused products. TechInsights testing documents are the only evidence that Samsung has submitted thus far in discovery regarding infringement.[1] Such testing evidence must be authenticated, along with the chain of custody for such product testing. Therefore, authentication and admissibility of TechInsights' testing evidence will be one of the primary discovery issues with regard to infringement and will be established through testimony from TechInsights personnel who actually conducted the testing. Other potential witnesses for

---

[1] Only some of the documents related to TechInsights' testing have been produced to date. TechInsights has objected to producing documents in response to a subpoena, and Samsung has withheld other documents and investigation materials that were the basis for its identification of Seoul on the basis of privilege/work product objections and objections that such information is not relevant or proportional.

3

infringement will involve Samsung's technical expert and potentially the inventors of the asserted patents. Even assuming that Seoul supplied some of the components for the accused products, Seoul's witnesses would have little to no relevance to the issue of infringement.

The same reasoning applies to damages. The alleged damages in this case will depend on the testimony of Samsung's damages expert and the amount of TCP's sale of accused products in the U.S. market (some of which may contain Seoul LEDs and some of which contain other supplier LEDs). Besides damages experts, relevant witnesses will be TCP's business and finance personnel. Samsung and TCP have not identified any basis for why Seoul witnesses would be necessary in establish damages.

Because the patent infringement and indemnification claims are distinct legal claims involving different evidence, different proof and different witnesses, bifurcation under Federal Rule of Civil Procedure 42(b) is appropriate, as courts have held in many other cases involving liability and indemnity. *See Magazzu v. Volmar Servs.*, No. 08-cv-2078, 2009 U.S. Dist. LEXIS 119213, at *23 (D.N.J. Dec. 21, 2009); *see also McGuire v. Bridgeport & Port Jefferson Steamboat Co.*, 2001 U.S. Dist. LEXIS 19753, at *2-3 (S.D.N.Y. Nov. 29, 2001); *Pridemore v. Hryniewich*, 341 F.R.D. 36, 39 (E.D. Va. 2022). The same rationale applies to this situation where there is distinction between the infringement and indemnity claim

In response to these cases, TCP has cited to *Wsou Invs., LLC v. Canon, Inc.*, 2022 U.S. Dist. LEXIS 252800 (W.D. Tex. 2022) wherein the court denied the third-party defendant's request to bifurcate the patent infringement claims and indemnity claims. The plaintiff in *WSOU* alleged that the Bluetooth functionality in defendant's camera infringed its patent. A component in the allegedly infringing camera was a chip containing Bluetooth functionality supplied the third-party defendant. *WSOU* is distinguishable in multiple ways. First, the third-party defendant

4

therein intended to "make arguments relevant to infringement that affect its obligation to indemnify", so allowing bifurcation would prejudice the defendant, as it would be in a "worse position to develop its non-infringement arguments." *Id.* at *19. More specifically, the third-party defendant alleged that the infringing component of the accused product was not the chips it supplied, but rather the Bluetooth software developed independently by the defendant. *Id.* at *12-13. Therefore, the question of what component or technology of the accused product was infringing weighed against a finding that there were no common questions of law or fact, as well as the respective prejudice to the parties. There is no similar dispute here: Seoul has no intention of raising any defenses related to non-infringement nor has there been any dispute that the allegedly infringing component of the Accused Products is the LEDs.

Second, there was a written supply agreement between the defendant and third-party defendant that contained express indemnification **and defense** obligations. The existence of a duty to defend obligation was a critical fact in the Court's analysis of three of the five factors in the bifurcation analysis: whether the claims arise out of the same occurrence, whether bifurcation would impair judicial economy, and the respective prejudice to the parties. *See id.* at *11-12, 15-18. No such agreement exists here.[2] Third, the request to bifurcate in *WSOU* was filed before discovery commenced. This was critical to the Court's determination that bifurcation was not warranted because the production of technical documents would be necessary from the third-party defendant. In assessing the factor of whether relevant documents and witnesses overlap, the Court stated: "[t]hird, **and perhaps most importantly**, keeping these cases together would streamline

---

[2] The only purported agreement upon which TCP relies as a basis for indemnification from Seoul is a one-page letter consisting of three sentences directed to TCP's customers, referencing licensed patents not at issue in this matter and lacking in consideration because Seoul was not a sole supplier of the accused LEDs to TCP.

5

discovery significantly." *Id.* at *13 (emphasis added). Seoul is seeking bifurcation for trial, not discovery, and it has already produced hundreds of pages of technical and design documents. Finally, there was no indication in *WSOU* that there existed the gross disproportionality between damages at issue and the costs of discovery and trial, as in this case. Accordingly, a comprehensive review of *WSOU* provides support for Seoul's request for bifurcation.

### B.  The Complexity of the Issues Supports Bifurcation

TCP suggests that a jury can easily understand the complex supply chain involved in this case. There is no basis for claiming this. The case is already complex due to numerous issues involved in the infringement case. There are four patents that involve highly technical semiconductor patents that will require expert testimony regarding infringement and invalidity. There are multiple defendants. And because Samsung chose to retain a Canada-based company for its infringement testing and reverse engineering, the infringement issues alone will involve numerous witnesses and present substantial complexity at trial.

None of the defendants challenge that the supply chain at issue is complex. Indeed, none of them have even identified the supply chain in response to interrogatories to date, instead producing complex corporate relationship charts that do not even explain the supply relationship between related but multi-national companies in the TCP family. TCP maintains a significant number of these affiliates, as well as contract manufacturers, in Hong Kong and China. These entities appear to export products to various countries, but as shown in the uncontested evidence submitted with Seoul's motion to bifurcate, few of these products actually enter the United States. And TCP has admitted in discovery that it, through these Hong Kong and China based entities, source LED components from multiple suppliers, including Samsung itself. The specific LED suppliers used in any given product appears to vary from year to year. Thus, depending upon the

6

date of the product's delivery and which TCP entity, affiliate or contract manufacturer supplied the product, countless distinct supply chains may exist. This is a far more complex supply chain than most patent cases, where a defendant sells the product directly into the United States.

Combining the complexity of the supply issues and the infringement issues will extend the trial in this matter, make it even more difficult to select a jury, and risks confusing issues of damages versus indemnification. *Ciena Corp. v. Corvis Corp.*, 2002 U.S. Dist. LEXIS 20826, at *4 (D. Del. Oct. 22, 2002) (the use of bifurcation to reduce the number of legal principles a jury must consider will allow trial to be more efficient and focused, allows juries to better understand legal issues, and does not cause prejudice to either side).

Further, to the extent that TCP suggests that it has produced a "paucity" of documents in response to Seoul's discovery requests, this hardly justifies denying Seoul's motion. It only shows that TCP has failed to produce documents relevant to indemnity, delaying Seoul's ability to bring legal challenge to the claim, but TCP, HGC and Samsung have produced many thousands of pages of documents in response to the infringement claim. In the underlying infringement case, there have been nearly 34,000 pages of documents produced in the case, many in different languages that are not easy to translate. There have been deposition notices served for over 40 witnesses spread out among multiple countries. The infringement and damages experts for the underlying patent infringement claim will not be witnesses to the indemnification claim. The fact that TCP has failed to produce all of the underlying evidence relevant to its indemnity claim does not obviate the fact that – in the liability portion of the case – discovery has and will continue to be extensive and expensive. Combining all of this in one trial will be extremely difficult to manage and does not make sense.

    **C.**    **Bifurcation Is Appropriate for Proportionality and Judicial Efficiency**

Patent infringement issues turn on whether the accused product practices the asserted patent claims and whether the asserted patents are invalid. In contrast, the indemnification claim arises from contractual obligations and requires an analysis of the parties' respective duties under the agreement—matters that do not overlap with the substantive patent law questions of infringement or validity.

The failure to bifurcate these fundamentally different claims raises significant concerns regarding judicial efficiency. This litigation involves four separate parties, and nearly 40 deposition notices have already been served. The parties have been unable to reach agreement on deposition scheduling, deposition location, sequencing, or which party may examine which witnesses. This lack of coordination stems directly from the failure to bifurcate the claims between the patent infringement and indemnification issues, despite their legal and factual independence. Notably, the discovery deadline has already been extended twice due to these complications.

These inefficiencies are particularly problematic given the *de minimis* sales revenue associated with the LED components contained in the accused products identified by Samsung. Even assuming that TCP and HGC's internal documents are correct, the total sales of Seoul LEDs contained in accused products sold in the United States for the first 15 months of this litigation are approximately $460,000. Patent damages are usually based on a royalty which, in the LED industry, is a small fraction of the sale of the LED. Assuming a two percent royalty, the total damage at issue thus far in the case is less than $10,000. There are twenty-one total attorneys that have appeared thus far in this litigation for the various parties. The damages at issue would not even cover a single billing hour by all of them combined.

Yet, the parties are incurring massive litigation costs – completely disproportionate to the value of the claims – due to the consolidation of patent infringement and indemnity issues in a

8

single track. Such inefficiencies weigh heavily in favor of bifurcation to promote proportionality and preserve judicial resources.

### D. Bifurcation Does Not Prejudice the Defendants

There is no evidentiary prejudice to any of the parties from bifurcation. Authenticity can be a matter of stipulation. Seoul has already produced 13,000 pages of documents, far beyond what would be proportional for this case given the limited amount of damages at issue. Witnesses can be videotaped and shown at trial. Samsung already has its infringement and technical experts, including the Canadian company that it intends to use at trial to show how it reverse engineered products to show infringement. TCP and HGC have all of the sales records relevant to damages. Ultimately, the "prejudice" argument appears to be something contrived to justify millions of dollars in legal fees incurred by Seoul in order to pressure Seoul in providing an outcome that the defendants cannot possibly obtain through litigation. As well as justifying "scorched earth" discovery by Samsung against one of its closest competitors (Seoul) and demanding production of all of its trade secrets.

If anything, consolidating these claims prejudices Seoul, both in terms of this ongoing litigation, as well as risking that the jury confuses infringement and indemnification at trial. "[B]ifurcation in more complicated cases involving primary claims, counterclaims, and crossclaims is thought to avoid potential prejudice, as jurors presented with multiple types of claims in the same trial are apt to misunderstand the presence of third-parties, confuse the issues to be decided, and simply lump alleged wrongdoers together when allocating fault." *Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 3:15cv1300, 2017 U.S. Dist. LEXIS 134682, at *17 (D.S.C. Aug. 23, 2017); *see also Magazzu*, 2009 U.S. Dist. LEXIS 119213, at *23; *Miller*

9

*v. N.J. Transit Auth. Rail Operations*, 160 F.R.D. 37, 42 (D.N.J. 1995); *Enzo Life Scis., Inc. v. Digene Corp.*, No. 02-212-JJF, 2003 U.S. Dist. LEXIS 10202, at *14 (D. Del. 2003).

### E.    Bifurcation is Not Premature

Samsung and TCP argue that Seoul's motion to bifurcate is premature because discovery is ongoing. That, however, weighs in favor of bifurcation. Bifurcation can be done at the trial stage, or earlier in a case, where it would promote judicial efficiency. For example, in certain cases, particularly ones where the legal costs outweigh the potential damages at issue, courts can order discovery to be phased or separate out between liability and damages, or other issues, based upon considerations of proportionality and judicial economy. *See, e.g.*, *Moreno v. NBCUniversal Media, LLC*, 2013 U.S. Dist. LEXIS 198660, *5 (C.D. Cal. 2013) (bifurcating discovery between liability and damages to permit deferral of costly and possibly unnecessary discovery proceedings).

Here, as explained above, the amount at issue in this case does not justify Seoul spending seven figures in legal fees and potential liability of millions more in defense fees for the other defendants. Postponing determination of this motion will only force the parties to incur additional legal fees based on the consolidation of the indemnity and infringement issues and defeats part of the benefit of bifurcation, both to the parties and the Court[3].

## III.    CONCLUSION

For the reasons stated herein, Seoul Semiconductor respectfully requests that the Court grant its motion to bifurcate Samsung's claims for patent infringement against TCP and HGC from TCP's third-party claims for indemnification against Seoul.

---

[3] As an alternative avenue of relief for the purposes of conserving further time and resources of both the Court and the parties, the infringement portion of the case could be stayed while the Court determines whether there is a legal basis for TCP's claim for indemnity against Seoul.

10

Dated: May 6, 2025

| | |
|---|---|
| MEYER, UNKOVIC & SCOTT LLP | */s/ Ronald P. Golden III* |
| | Stephen B. Brauerman (#4952) |
| David G. Oberdick (*pro hac vice*) | Ronald P. Golden III (#6254) |
| PA I.D. #47648 | Bayard, P.A. |
| Kate E. McCarthy (*pro hac vice*) | 600 North King Street, Suite 400 |
| PA I.D. #325771 | Wilmington, DE 19801 |
| Henry W. Oliver Building | (302) 655-5000 |
| 535 Smithfield Street, Suite 1300 | sbrauerman@bayardlaw.com |
| Pittsburgh, PA 15222-2315 | rgolden@bayardlaw.com |
| (412) 456-2800 | |
| (412) 456-2864/Fax | *Attorneys for Seoul Semiconductor Co. Ltd.* |
| dgo@muslaw.com | |
| kem@muslaw.com | |

Jennifer Jonak (*pro hac vice*)
Jonak Law Group, P.C.
1711 Willamette St., Suite 301, # 145
Eugene, OR 97401
Telephone: (541) 525-9102
jenny@jonak.com