IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., | ) |
| Plaintiff, | ) 1:23-CV-186 |
| v. | ) |
| TECHNICAL CONSUMER PRODUCTS, INC.; *et al.*, | ) |
| Defendants. | ) |

**OMNIBUS MEMORANDUM ORDER**

Before the Court are two pending motions: (1) Third-Party Defendant Seoul Semiconductor Co., Ltd.'s motion to compel Plaintiff Samsung Electronics Co., Ltd.'s responses to Seoul's discovery requests (ECF 323); and (2) Seoul's motion to bifurcate Third-Party Plaintiff Technical Consumer Products, Inc.'s indemnification claims from Samsung's patent-infringement claims (ECF 244). All motions have been fully briefed and are ready for disposition. The Court issues this omnibus order resolving the motions.

**I.  Seoul's motion to compel Samsung's responses to Seoul's discovery requests (ECF 323).**

Seoul moves to compel responses to Interrogatories Nos. 1, 2, and 8 and Requests for Production of Documents Nos. 1-7, which relate to "the pre-complaint investigation and testing conducted by or at the direction of Samsung to support Samsung's allegations identifying Seoul LEDs as being incorporated into the accused lighting products sold by TCP[.]" ECF 323, p. 2. This would include information and documents about the specific processes Samsung used to identify the Seoul LEDs, the equipment used for the analysis or testing, the date and place of the analysis or testing, and any photographic images generated from the testing. Seoul asserts that this information is relevant to its defense to TCP's indemnification claims, because

Seoul disputes that the allegedly infringing LEDs were made by Seoul. After careful review, the Court denies the motion.

To begin with, the Court denies the motion as to RFP Nos. 1-7, based on Samsung's representation that the parties did not meet and confer about these document requests. ECF 331, p. 5. The Court also denies the motion as to Interrogatory No. 8 because Seoul has not identified any particular concerns with Samsung's supplemental response to Interrogatory No. 8. *See* ECF 324, p. 7.

As to Interrogatories Nos. 1 and 2, only the pre-suit investigation with respect to the L60A and Gavita products are at issue, because neither the initial complaint nor the amended complaint references the RLPT product. *See* ECF 49, ¶¶ 17, 19, 25, 43, 61, 79, 87. For the Gavita product, Samsung provided supplemental responses stating that between October 2021 and November 2022, Hawthorne indicated during discussions with Samsung that Hawthorne had selected Seoul as the source of the LEDs incorporated in the Gavita product. ECF 331, p. 10. Based on Samsung's representation that "[t]here were no other processes or equipment used by Samsung" as to the Gavita product, the Court denies the motion to compel responses to Interrogatories Nos. 1 and 2 for the Gavita product. *Id.*, p. 13 n.9.

What remains is discovery on the pre-suit investigation for the L60A product. Samsung's supplemental interrogatory responses state that Samsung "benchmarked LEDs from various competitors, including [Seoul]," and "[a]s part of its pre-suit investigation, Samsung examined and analyzed the LEDs incorporated into the [L60A product], including by comparing such analysis with certain benchmark information….Based on this pre-suit investigation, Samsung formed a good faith understanding that the LED in the [L60A product] torn down and discussed in Samsung's [initial and amended complaints] was manufactured by [Seoul]." *Id.*, p. 11.

Seoul contends that this response is insufficient, and that many questions remain about Samsung's pre-suit investigation, including: (1) "How were the benchmark Seoul LEDs and the lighting products obtained and what chain of custody records exist between acquisition to analysis to reporting?"; (2) "What characteristics or 'fingerprint' matches were observed or identified?"; (3) "What tear-down process of the lighting products occurred and what machines and processes were used for comparison?"; (4) "Were any proprietary markings on the LEDs observed?"; and (5) "What confirmation occurred as to the identity and source of the LEDs examined by TechInsights?" ECF 324, pp. 16-17.

In the Court's view, the information that Seoul seeks from Samsung is protected under the work-product doctrine. Rule 26(b)(3)(A) provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation" unless "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). "The initial burden is on the party asserting work product protection to show that the materials at issue were prepared by or for its representative in anticipation of litigation or for trial." *Innovative Sonic Ltd. v. Rsch. in Motion, Ltd.*, No. 3:11-0706, 2013 WL 775349, at *1 (N.D. Tex. Mar. 1, 2013).

Based on Samsung's identification of at least two items (analyses of Seoul LEDs dated December 2022 containing in-house counsel's mental impressions) in its privilege log that relate to the issue of Samsung's identification of Seoul as the source of the LED chips, the Court finds that the requested testing information was prepared in anticipation of litigation. "[P]relitigation testing in patent infringement cases can constitute protected work product." *Graham Packaging Co., L.P. v. Ring Container Techs., LLC*, No. 23-00110, 2024 WL 1221178, at *4 (W.D. Ky. Mar. 21, 2024) (collecting cases); *see also Innovative Sonic Ltd.*, 2013 WL 775349, at *2 (materials

pertaining to pre-litigation infringement testing of the accused products are protected by the work-product doctrine).

Even if facts about the testing methodology used to identify Seoul as the source of the LED chips do not implicate attorney mental impressions, facts that go to the results or interpretation of such testing are nonetheless protected work product. *See Kaneka Corporation v. Designs For Health, Inc., & American River Nutrition LLC*, No. 21-209, 2025 WL 1424660, at *2 (D. Del. May 7, 2025) ("Numerous courts have held that the results of testing performed at the request of counsel in anticipation of a litigation, including patent infringement litigation, are protected as work product."); *Gropper v. David Ellis Real Est., L.P.*, No. 13-2068, 2014 WL 904483, at *3 (S.D.N.Y. Mar. 4, 2014) ("[F]act work product may encompass factual material, including the result of a factual investigation." (cleaned up)); *Reckitt Benckiser LLC v. Amneal Pharms., LLC*, No. 11-6609, 2012 WL 2871061, at *6 (D.N.J. July 12, 2012) (finding that testing procedures and protocol fall within the work-product privilege). While Seoul purports to only seek information on the manner and methods of the pre-suit investigation, Seoul's questions about details of the benchmark testing—*i.e.*, whether any proprietary markings were observed and what "fingerprint" matches were observed or identified—go to the data, results, analysis, and interpretation of the testing.

Samsung has not waived work-product protection. While Seoul argues that the privilege has been waived because Samsung chose to target Seoul in the complaint, merely identifying Seoul in the complaint as the source of the allegedly infringing LED chips doesn't entitle Seoul to discovery on the testing that Samsung considered in bringing suit. *Compare nCAP Licensing, LLC v. Apple Inc.*, No. 217-905, 2018 WL 10509455, at *2 (D. Utah Dec. 7, 2018) ("[S]imply relying on the work-product materials to file a lawsuit is not enough to automatically waive work-product protection[.]") *with Morningware, Inc. v. Hearthware Home Prods., Inc.*, No. 09-4348,

2011 WL 4729922, at *5 (N.D. Ill. Oct. 6, 2011) (patentee waived work product protection by voluntarily producing documents related to pre-filing testing), *and Lexington Luminance LLC v. Feit Elec. Co., Inc.*, No. 1810513, 2020 WL 10052401, at *10 (C.D. Cal. June 12, 2020) (by disclosing SEM images and EDX measurements in the complaint, plaintiff put this data at issue and thereby waived work product protection for those materials). Additionally, Samsung has represented that it doesn't intend to rely on its pre-suit investigation to prove infringement at trial. *Cf. Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 09-1685, 2010 WL 4537002, at *2 (M.D. Pa. Nov. 3, 2010) (if plaintiff relies on the pre-suit testing data as evidence to support its infringement claims, then it is deemed to waive work product protection).

Seoul hasn't shown a substantial need for the requested information. Seoul argues that it is unable to independently determine whether its LEDs were used in the Accused Products because: (1) there are many LED manufacturers worldwide, (2) LEDs are extremely small components, (3) the data provided by Samsung (including the electron microscopic images) isn't sufficient for Seoul to independently verify whether the products at issue contain Seoul chips, and (4) TCP's records confirm that TCP purchased LEDs for the Accused Products from multiple suppliers but don't show how Seoul LEDs are distinguished from other suppliers to TCP. ECF 324, p. 14.

During the April 10, 2025, conference on this dispute, Seoul stated that it did not know whether TCP actually has detailed information whereby it can trace a specific LED to the specific Accused Products, but that Seoul was making inquiry with TCP for this information. ECF 302, 16:5-21; *see also id.* at 33:2-13 (Seoul's counsel stating that, to identify which LED is in which Accused Product, "there's going to be a need to see what TCP records can show and perhaps maybe can't. And if there is some other information that made a connection or that serves the purpose

of somehow identifying Seoul in this case, or perhaps it doesn't, I want to know that….[A] lot of this is going to turn on TCP, but if there's other information out there that's relevant, it's worth knowing."). Given that Seoul appears to be working through the records provided by TCP (and TCP should be in the best position to provide such information), Seoul hasn't shown a substantial need for Samsung's pre-suit investigation identifying Seoul LEDs.

More fundamentally, the Court questions whether Samsung's pre-suit investigation is necessary for Seoul's defense to TCP's indemnification claims, when TCP—the party with the burden of proving its indemnification claims against Seoul (*e.g.*, that it is *Seoul's* chips that have been accused of infringement)—itself hasn't yet sought this information from Samsung. Rather, as TCP explained during the April 10, 2025, conference, for its indemnification claims, it intends to rely primarily on the sales invoices and bills of materials for each Accused Product, along with expert testimony on apportionment issues (since there may be multiple suppliers of LEDs used in an Accused Product). ECF 302, 23:7-24:10.

For these reasons, the Court denies the motion to compel.

**II.  Seoul's motion to bifurcate third-party indemnification claims from infringement claims (ECF 244).**

Seoul moves under Rule 42(b) to bifurcate TCP's indemnification claims from Samsung's infringement claims. "Under Rule 42(b), a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management. When exercising this broad discretion, courts should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 567 (D. Del. 2013) (cleaned up); *see also Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1434 (D. Del. 1989) ("[A]n overlapping of issues is significant to the decision whether to

bifurcate. The degree to which the issues overlap can often best be assessed by examining the amount of evidence and the number of witnesses that would be presented at both trials." (cleaned up)).

Seoul argues that Samsung's infringement claims involve different issues (whether the Accused Products meet all of the limitations of the asserted claims; calculation of damages/the amount of TCP's sale of Accused Products in the U.S.; claim construction; prior art/invalidity) from TCP's indemnity claims (whether the LEDs in the Accused Products are Seoul LEDs; whether Seoul has a duty to indemnify TCP; what the supply chain in the LED industry looks like). ECF 320, pp. 6-8. As such, Seoul argues that the claims involve distinct evidence and witnesses: the infringement claims will involve technical/testing evidence on semiconductor technology, technical experts on infringement and invalidity (and the inventors of the Asserted Patents), and damages expert, whereas the indemnity claims will involve supply agreements/contracts between TCP and Seoul or TCP and its contractors, sales records, and import/export records. ECF 245, pp. 11-13.

Samsung, TCP, and Hawthorne Gardening Company argue that Seoul's motion to bifurcate is premature because discovery is incomplete and dispositive motions have not been filed or decided, so the Court does not have full information about the factual and legal issues that need to be tried. ECF 295, p. 10; ECF 298, p. 9.

The Court agrees that, at this stage, it is too early to decide whether bifurcation is warranted in this case. The Court will defer ruling on Seoul's motion to bifurcate until at least after the close of expert discovery and prior to summary judgment filings, at which point the Court would be in a better position to determine the extent of overlap between the infringement and indemnity claims. *See J.R. Simplot Co. v. McCain Foods USA, Inc.*, No. 16-00449, 2021 WL 5217620, at *2 (D. Idaho Nov. 9, 2021) (denying as premature a motion to bifurcate indemnification claims from

infringement dispute, because the court would be in a better position to determine the format of trial after it has ruled on dispositive motions).

Seoul alternatively proposes that the infringement portion of this case be stayed while the Court determines whether there is a legal basis for TCP's indemnification claims against Seoul. ECF 320, p. 14. While the Court recognizes that Samsung, TCP, and Hawthorne do not oppose this alternative proposal (ECF 333, ECF 336) and that Seoul has concerns that it is incurring disproportionate litigation costs due to the consolidation of the infringement and indemnity issues, staying the infringement issues until after the indemnity issues are resolved would be inefficient, particularly because the parties' understanding of the nature and scope of any indemnity may be shaped by the discovery in the infringement case. For example, TCP and Hawthorne allege that Samsung "has existing licenses with other LED chip manufacturers, so [] if the LED chips in the accused products are not Seoul LED chips, they are potentially licensed and are thus non-infringing." ECF 295, p. 13. So Samsung, TCP, and Hawthorne have some shared interest in figuring out the source of the LED chips in the Accused Products, and to the extent that the ongoing discovery in the infringement case has revealed that the LED chips in the Accused Products are not Seoul LEDs, and are potentially non-infringing, this will affect the indemnity case as well.

Accordingly, both the motion to bifurcate and the request to stay the infringement portion of the case are held in abeyance until at least after the close of expert discovery.

DATED this 27th day of June, 2025.

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge